may it please the court counsel my name is Suzanne Elliott I'm here this morning on behalf of mr. Todd who is challenging his convictions under the federal sex trafficking statute and the basis of his challenge is that section 1591 does not criminalize all acts of prostitution that's normally a vice left to the state courts but rather those that are accomplished either by involving children which is not the case here or by force fraud or coercion and it's that phrase that is lifts a mundane promoting prostitution case to focus on it doesn't it focuses on knowledge of the pimp it's not correct happens afterwards it's what the pimp knows is recklessly indifferent to knowing at the time he recruits the victim and the victim is the prostitute that is correct quite an unusual statute the prostitutes are the victims that is correct well I guess the issue comes your honor whether at what point the force fraud or coercion is both a part of the pimp's mental state as well as how it relates to the commercial sex act well you know we know about mr. Todd that he's a pretty violent character he knows how he's treated prostitutes in the past doesn't he have a pretty good idea of how we keep these people making money from he he yes but it doesn't involve the kind of force fraud and coercion that Congress if I understand it correctly his rule with these three women is you gotta earn at least five hundred dollars a day for me that's correct that was one of the rules testified to yes how does he think that's going to happen both he and the he his promise and his your honor his promise was riches that we're going to live the good life none of these women fraudulent none of these women well they made a lot of money according to the government that was the government's theory but these but he took it all it was no doubt about that he took most of the money I don't think there was anything fraudulent about that stop at the fraud if the if the promises to the women you're gonna get rich he knows he's gonna take it all no he said we're gonna get rich he he was romancing the women as well and the promises were of a of a kind of a we're gonna live the good life and these women motivated by the good life although probably incorrectly went ahead and he has no intention of doing it once he gets them going he's gonna take their money and they're gonna live in a room and be ready to meet the next demand yes your honor that is true but it's not the kind of forced fraud or coercion that was anticipated by Congress when they passed the sex what Congress anticipated is what mr. Prada anticipated how do we know what Congress anticipated because Congress made some rather extensive findings when it came to sex trafficking and it's clear that Congress as well as the comments of the congressman at the time the statutes being contemplated is that this the kind of sex trafficking that they were anticipating that the statute would target would be women who are brought from overseas don't speak English element but you know and I would say that for the last decade we don't look at legislative history if the statute is playing and the statute is playing the statute is the statute I think is ambiguous but assuming let's say that you was about I think it has its force fraud and coercion knowing the force quite and fraud or coercion would be used in a sex act not this government's here is the government's theory here is that all mr. Todd had to do was know at some time in the future he was going to use force fraud or coercion with these women when he met them I think that that temporal relationship is different in the statute that you well because the force fraud or coercion has to be related to a particular commercial sex act can't simply be that he's manipulative that he's a liar that he misrepresents how much money each of these women he causes them to be available to answer a call from a customer for a commercial sex act that is correct and they had abs they were under absolutely no misapprehension about what they were doing there was no two of the three of them had been prostitutes before now he was a vile character but he wasn't particularly misleading about what they were up to you're not alleging that the government didn't prove that he had the intent you're simply saying that the statute is ambiguous and therefore the requisite intent can't can't it's not fair enough for a criminal statute is that what you're saying what I'm saying is that even under the government's theory which is that you just have to have the idea in the future you're going to have to use force there wasn't enough evidence here to prove that because the proof was that they didn't need for he didn't need force fraud or coercion to get these women to work for him. But under the standard now this one this went to trial right? Yes that is correct. So under that you know very well what the standard is we just have to find out whether there was any basis for any juror basically to conclude that the there was a halftime motion so it's de novo review but you have to take the evidence in the light most favorable to the government and I'm sitting in my briefing I think made it clear I think even under the government's theory and under the evidence submitted here they they didn't prove sex traffic they may have proved promoting prostitution but they didn't prove sex traffic. But is that as Judge Noonan indicated I mean I admit that this statute and perhaps even others in the United States Code are not a model of clarity but it does seem pretty clear though that what you're really talking about is the state of mind of the pimp that's really the question here and when you look at 1591a either has to know or in reckless disregard of the fact that by means of threats of force fraud or coercion as described in other subsection or any combination thereof will be used to cause the person engaged in commercial sex act so if the pimp on day one sits down and says I'm gonna go in the pimp business and and I I know that in order to get cooperation here I'm gonna have to threaten and intimidate and coerce and so on if the government proves that and there was a follow-on where he does things to facilitate like that in this case we had the assistant who uplist things on the internet and so on and drive people and so on doesn't that fully satisfy what this statute says no your honor because I think that none of that establishes force fraud or coercion as anticipated by the statute he met these women he romanced them but but it but this this just simply says does that does he knowingly or within reckless disregard of the fact contemplate that this is going to happen I mean that's the way I read it here and there was no proof of that in every one of these relationships he targeted women who who were already that doesn't really matter does it because we're not talking about what they were doing before the question is whether he was going to use these things to get them to commit the commercial sex act and the fact that they did it before they did it afterwards it seems to me is irrelevant to the issue of whether he intended either knew he was going to do it or was in rent debt reckless disregard of the fact that he was going to well I think it's very relevant to his state of mind because he picked women he knew he wouldn't have to force to do anything they were already involved in prostitution why did he treat them the way he did I mean there's a lot of evidence I don't think he's pretty bad stuff I don't think he's a very nice man and I think he wanted to make a lot of money but the women had family in the area they all testified that they viewed this as a way to make a lot more money than they could make it legitimate jobs they were they were very afraid of this man and in a couple instances I think he choked one and he did how much money do they make well the government the restitution order I think is in the $300,000 how much money did any prostitute make they said they made nothing they said that he took everything yeah he said that's what their testimony that he took all the money but they're the victims realize that yes absolutely that's fraud isn't it if they said you were gonna live the good life share it and he kept all the money isn't that fraud I don't maybe the first time your honor but after months of committing the prostitution I don't know how they could be under any illusion that what he was telling them was fraudulent I mean what's the truth it wasn't fraud in that sense they all knew what prostitution was about as a court of appeal what role if any can sociological information this has been bandied about here about the way prostitutes operate and their their relationship with pimps and so on is there any basis for us to take that into account none in fact in the trial court there was offer of expert testimony which judge Robart quite properly said was inappropriate and so it seems to me that if you're talking about the government's argument that we should take into consideration the vulnerabilities of these women I think it's not in the statute so no you can't but if you look at the cases that talk I don't know why you can't because that's certainly a factor susceptibility to being defrauded all right accepting that it could in this case the government did not prove any of those vulnerabilities you know if for example you're talking about a woman who's brought from Southeast Asia who speaks no English whose passport is taken who's lied to when she leaves her home country and says you're going to be a nanny all of those evils that Congress talks about and and if you look at the voluntary involuntary servitude cases that the government has cited with we're retarded people people of limited intellectual capacity have been victimized maybe so but even on this track you know this goes on all the time you know it's going on in this city right now that is young girls and young boys they come from homes where they're treated horribly and they run away they come to the streets and they're just targets for these pimps who know of their vulnerability who who know how to romance them and to get them into their clutches and then all they become then it's just property for them and if they don't follow the the dictates of this pimp you know they get beaten up all those things happen to them you know we just didn't fall off a turnip wagon a week ago I understand that and and this is this is something that's gone on for thousands and thousands of years it's a terrible terrible blot on our society it's brought about by men who treat women lower than the regard them in a lower class than than cows or sheep or goats so this is the history so anyway let's hear from the government all right good morning your honors my name is Yi Ting Wu I'm an assistant United States attorney I was one of the trial attorneys that handled the case involving Jerome Todd this case was about a man who exploited young women and these women were ages 18 19 and 20 he was 8 to 10 years older than they were he took advantage of their station in life so to speak and I appreciate that the court recognizes that there was fraud here that was one of the theories that the government advanced to the jury at the time of the trial in addition to fraud there was force and there was coercion and the evidence that the government showed at trial was that the defendant used his co-conspirator as the example that is how we establish knowledge that is how we establish his intention at the time that he recruited the first of these victims Whitney Thorn at that time he had already been the terminology is pimping out his co-defendant he had already beaten her when she did not comply with his rules he had already shamed her called her name Kelsey Kirschman so he had already used the force of the fraud you know I think the government produced evidence but some things I found it hard to accept as relevant I mean you convey the impression of Todd as a bad guy but say he called some bad names that's not force that's not fraud it shows he's an ugly guy but why do you cite that as that to us was a way of humiliating them okay but is that force or is it fraud well there are three there are three ways there's it's not force or fraud but it is coercion why is it coercion because they wanted to please him so they wanted to what they wanted to please him they wanted to make him happy that's why they gave him the money they wanted him to love them they wanted him to appreciate what they were doing in his denial of affection coercion yes that is that that is one of the arguments that we made that you did that isolation the denial of affection that's what he was doing to compel them to do this work the harder they worked the more he would love them so they worked hard to please him but if they couldn't do it he would debase them he would beat them he would threaten to beat them yes not being affectionate isn't another point in the government's case that puzzled me was all the emphasis on his fear of competition from other black men what does that to do with anything it's uh well it's an interesting aspect what does it show what does it prove as to his knowledge he would use force or fraud it was a rule that he imposed I know but what does it show as to force or fraud that if they violated that rule he would punish them what does that to do with causing a sex act well he didn't want the competition which he characterizes other black men to take them away it seems to me the government got away with I won't say murder but with showing a lot of irrelevant stuff you've been talking here now answering my questions for two or three minutes without answering it the the stuff about the black men had no relation to what you were trying to prove what was included in one of the rules so it was the collection of people that make it the fact that he would punish people for you saying that's that was part of the scenario of control is that what you're trying to tell him yes he imposed rules and those rules may not make sense to us I completely agree with your honor it does not make sense to me he called them rules by the way yes he did so he said to these women look we're gonna have this great life but if we're gonna do that you got to follow some rules exactly if you don't do this you're gonna be in trouble correct now the relevant rule which I think you ought to focus on is you've got to earn five hundred dollars a day correct and can you spell out what was the sanction if one of the victims failed to use earn five hundred dollars it's my recollection that Jamel Larkin who is the victim in count Jamel Larkin who was the victim in count five she reported that one day when she came home and had not earned enough money that he assaulted her and that he called her names he was pushing and shoving yes yes physical yes thank you your honor so there was pushing and shoving and slapping he was unhappy because she did not bring home enough money so that is one consequence of violating a rule it seems to me frankly that the government's case was supposed to focus on his foreknowledge or his indifference but you spent a lot of time sort of blackening his character and showing things he did which were very unpleasant and so forth but they were not did not bear on what he must have known at the time we recruited them what if I could answer that question in two parts first of all with respect to evidence about his character and the way that he treated the woman that may not be directly tied to their acts of prostitution the reason why the government brought in that evidence was to establish a climate of fear there are reasons why these women feared him it may not necessarily be directed to their having to have sex with other men for money but they fear that if they didn't follow his rules such as a rule about having contact with other black men that they would be beaten they did not want to be beaten they wanted to be able to go out and make the money that they needed to make so that they could give him that money and then they would not be beaten so it was creates a climate of fear you have to show though that prior to the commission of the sex acts the commercial sex act that Todd either knew or was there was a no knowing disregard of the fact that he was going to use yes forced coercion fraud to get them to commit these commercial sex acts and and for purposes of our review we have to basically defer to the jury's finding unless there's just nothing to tie this evidence together is that right well the evidence is there and the evidence again is Miss Kirschman she was his first prostitute right the way he treated her shows us that he knew he could use force, fraud and coercion to compel another person to engage in sex act. You want to review the evidence of force on her that he used prior to recruiting the others? Yes there was evidence that he used force on her prior to recruiting the others in fact each of the other three women testified that they observed him beating her, choking her, shoving her and slapping her. So they all knew each other? They did not know each other but they knew her because so for example Miss Kirschman worked for him for a year and a half during that time he recruited the for him from approximately February 2007 until June of 2007 she then escaped she was able to leave him. He then recruited Whitney Eichler who worked for him in July and then she as you may recall her mother was desperate trying to find her and so the police were able to assist in her mother locating her and then in that entire time Kelsey Kirschman was his co-conspirator and worked with him as well. Were there drugs involved in this? There were some drugs involved in that some of those drugs for example with respect to Whitney thorn ecstasy was used to help calm her down the first couple of times and counsel is incorrect in noting that all of these women engage in prostitution prior before they worked for Mr. Todd. Kelsey Kirschman had a job at Fred Meyer she just graduated from high school she had nothing to do with prostitution he introduced her to it. Same thing with Whitney Thorn she had a job and he had her leave that job in order to work for him as a prostitute. Did he introduce any of these women to use of narcotics? No he did not introduce the use of narcotics to any of these women. Were any of the women addicts? I'm sorry your honor? Were any of them addicts? No they were not. What role if any does the fact that say one of the women was engaged in prostitution before or after have on if you will the causal link. I'm inclined to agree with Judge Noonan that there's got to be some causation the forced coercion fraud has to be if you will the proximate causation of their engaging in acts of commercial sex. So the fact that somebody was doing the commercial sex before and or after doesn't that somewhat sever or at least attenuate the causal link? It may attenuate in that we have the requirement of showing forced fraud and coercion. So one of the witnesses one of the victims Whitney Eichler actually gave a very good example of the difference between working for a pimp who did not use forced fraud and coercion versus working for Jerome Todd who did use forced fraud and coercion. She indicated in her testimony that for approximately a week she worked with her friend who she considered to be a pimp. His name was Drew. They shared the money. He didn't tell her where to go. How to act. He did not isolate her from her family. He did not tell her to call him constantly. He did not impose a monetary amount that she had to earn on a daily basis. And I gather the government's position is that we're supposed to take this as kind of like a frame, a picture frame. If there's a frame over here with Drew and there's a frame here with Todd and you can show that Todd used fraud, force or coercion to cause there was a proximate causation of this woman engaging in a commercial act of sex. What happened before or after is irrelevant for purposes of proving the elements of the crime in that frame. Yes. That is our position, Your Honor. Now, this Court has previously discussed coercion and exploitation in United States v. Mustry, which is one of the cases that we cited in our brief, and considered that that coercion is as broad as it is includes psychological coercion. It takes into consideration a person's vulnerabilities. It takes into consideration their station in life, their age, the extent that they can be exploited by the person who indentures them. And so this Court has applied that to its broadest sense and that's the same definition that we, the government, argued to the jury at the time of the trial. If the Court would like, I'm happy to talk about the history of the Trafficking Victims Protection Act with respect to how Congress intended that this statute to be applied, but based on the comments the Court made with respect to Ms. Elliott, I'm not sure that the Court is particularly concerned with that, but I'm happy to answer any questions with respect to that. Whatever you do, don't talk about an octopus. I don't know anything about octopuses. So unless the Court has any further questions. Thank you, Your Honors. Just briefly, Your Honors, in terms of the term coercion, it's defined in the statute, and so there's no reference to the vulnerabilities of the victims in the statutory definition of coercion. What's the definition? The definition of coercion is at 18 U.S.C. 1591 C.2. This is the old definition, is that right? No, this is the statute that was provided to me yesterday that I think we all agree is the current one. Am I correct? No, I thought they provided the old one. No, no, they provided the correct one yesterday, Your Honors. Yes, that's the correct one. I'm quoting from the one I got yesterday. Okay, just to be sure. Threats of serious harm or physical restraint to any person. Go on and see. And I think if you look back at the congressional findings, which I know the government doesn't want you to look at, that's, you know, the threat that you'll be deported, that they'll take away your passport, you'll be arrested, that sort of thing. At any rate, we'd ask that the Court reverse the three convictions challenged here and remand. Thank you. Thank you. Good arguments, both of you. Those were very helpful. I'd like to say every criminal defendant needs and has a right to a lawyer, and I think you took on a rather thankless task. But really it's to your credit that you took Mr. Todd as a client and done your best for him.  That's it. Well, you're on the CJA panel, right? I am, that's correct, Your Honor. We still thank you. I'm the chairman of the Court's Federal Defenders Committee, so I've supervised those panels, and I know we have a lot of excellent lawyers throughout the circuit. Thank you. All rise. This Court for this session stands adjourned.
judges: Pregerson, Noonan, Smith M.